United States District Court
Eastern District of Michigan

United States of America,

    Plaintiff,                  Civil No. 1:26-cv-10644

v.

K&M Pets LLC d/b/a
Custom Creatures,

    Defendant.

---

# Complaint for Declaratory and Injunctive Relief

---

Plaintiff, United States of America, by authority of the Attorney General of the United States and through its undersigned attorneys, files this Complaint and alleges as follows:

## INTRODUCTION

1.    This is a civil action against K&M Pets LLC, d/b/a Custom Creatures ("K&M Pets" or "Defendant") for violations of the Animal Welfare Act ("AWA") and its implementing regulations.

2.    Congress enacted the AWA for a number of purposes, including to ensure that animals used for exhibition purposes or held for sale are provided humane care and treatment. 7 U.S.C. § 2131. The AWA imposes "minimum requirements" for handling, housing, feeding, watering, sanitation, and adequate

1

veterinary care, among other requirements. *Id.* § 2143(a)(2)(A).

3.      A cornerstone of AWA enforcement is the unannounced inspection conducted by the U.S. Department of Agriculture ("USDA") Animal and Plant Health Inspection Service ("APHIS"), which allows APHIS officials to accurately assess a licensee's compliance with the AWA, its regulations, and its standards, and ensure the wellbeing of AWA-regulated animals. Licensees are required during business hours to allow APHIS officials to enter the place of business to inspect and photograph the facilities, property, and animals. 7 U.S.C. § 2146(a); 9 C.F.R. § 2.126(a).

4.      In April 2024, Kallan L. Hohman applied to USDA on behalf of K&M Pets for an AWA class "B" license to purchase, resell, and exhibit certain animals regulated under the AWA at two facilities, one in Saginaw, Michigan, and one in Lapeer, Michigan. *See* Ex. 1 (Application for License). USDA approved the application in May 2024. *Id.*

5.      K&M Pets has failed to grant APHIS officials access to its facilities each of the 11 times APHIS officials have attempted to inspect them between September 2024, and January 2026. *See* Ex. 2 (September 24, 2024 Inspection Report for Lapeer Facility); Ex. 3 (November 7, 2024 Inspection Report for Saginaw Facility); Ex. 4 (November 20, 2024 Inspection Report for Saginaw Facility); Ex. 5 (December 11, 2024 Inspection Report for Saginaw Facility); Ex. 6

(December 11, 2024 Inspection Report for Lapeer Facility); Ex. 7 (January 23,

2025 Inspection Report for Saginaw Facility); Ex. 8 (January 23, 2025 Inspection

Report for Lapeer Facility); Ex. 9 (March 19, 2025 Inspection Report for Saginaw

Facility); Ex. 10 (March 19, 2025 Inspection Report for Lapeer Facility); Ex. 11

(June 4, 2025 Inspection Report for Saginaw Facility); Ex. 12 (January 23, 2026

Inspection Report for Saginaw Facility).[1] K&M Pets' failure to do so has prevented

APHIS officials from inspecting its facilities, records, and—most importantly—-

animals, since September 2024.

6.     This blatant refusal to allow inspections is concerning on its own. But

the number and types of violations that APHIS officials observed the last two times

they were able to assess the conditions of K&M Pets' animals and facilities, as

well as the current conditions for animals at the premises, compound that concern.

7.     During an inspection on August 14 and 15, 2024, APHIS officials

found that K&M Pets failed to provide adequate veterinary care to critically ill

animals and had inadequate knowledge of how to care for its animals. *See* Ex. 13

(August 14, 2024 Routine Inspection Report for Saginaw Facility); Ex. 14 (August

14, 2024 Focused Inspection Report for Saginaw Facility). Inspectors observed a

male rabbit with a "significant amount of wet fur covered with brown liquid that

---

[1] K&M Pets has not appealed any of the citations in the inspection reports cited in
this complaint, and the appeal period has run on all but the January 23, 2026
Inspection Report. *See* 9 C.F.R. § 2.13 (appeal of inspection report).

appear[ed] to be a mixture of urine and/or diarrhea," and a 4-to-5-month-old

spotted hyena that was moving abnormally, in a manner consistent with lameness

resulting from "pain, poor muscle development, or hind limb instability." Ex. 13 at

2-3. APHIS officials instructed K&M Pets to have the animals examined and

diagnosed by a veterinarian by August 16, 2024. *Id.* at 3. APHIS officials found

many other violations during this inspection, including housing animals in too-

small enclosures and housing prey animals too close to predator animals and in

public areas with no areas for the animals to hide.

8.     APHIS officials returned four days later and documented six more

citations, five of which were repeat citations from the August 14 and 15, 2024

inspection. APHIS officials learned that K&M Pets had allegedly sold the hyena

and the rabbit that were documented as in serious need of veterinary care during

the August 14 and 15 inspection instead of having a veterinarian examine them.

Ex. 15 (August 19, 2024 Focused Inspection Report for Saginaw Facility).

Inspectors attempted to locate the alleged purchasers of the animals to determine if

they received veterinary care after they were bought by visiting the addresses listed

on the disposition records provided by K&M Pets, but the purchasers did not

appear to exist, indicating that K&M Pets provided fraudulent records to the

inspectors. *Id.*

9.     In light of the numerous documented noncompliances observed by

APHIS officials during the August 2024 inspections, APHIS issued K&M Pets a Notice of 21-Day Suspension of License documenting these violations and suspending its license on August 29, 2024. *See* Ex. 16 (Official Notice of 21 Day Suspension of License).

10.     Following the expiration of the 21-day suspension of its license, K&M Pets has failed to comply with the AWA by refusing to allow APHIS officials access to conduct any routine or focused inspections of its facilities, property, records, or animals.

11.     Although APHIS officials have not been able to conduct inspections of K&M Pets since September 2024, at the January 23, 2026 attempted inspection, an APHIS official did observe concerning conditions at the facility in Saginaw, Michigan, including animals in enclosures without water or shelter and a sloth that was exposed to harsh drafts of negative 22-degree Michigan winter weather.

12.     For the following reasons, the United States seeks a declaration that Defendant is violating the AWA by refusing to allow APHIS officials to inspect Defendant's premises, animals, and records. The United States also seeks injunctive relief, including a temporary restraining order and preliminary injunction, requiring Defendant to allow APHIS officials to inspect Defendant's premises, animals, and records.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over this action pursuant to 7 U.S.C. §

2146(c) (actions arising under the AWA); 28 U.S.C. § 1331 (federal question

jurisdiction); and 28 U.S.C. § 1345 (United States as plaintiff).

14.     Venue is proper in the United States District Court for the Eastern

District of Michigan pursuant to 28 U.S.C. § 1391(b), because Defendant resides in

this judicial district and a substantial part of the events or omissions giving rise to

the claim occurred within this judicial district, in Saginaw and Lapeer counties in

Michigan.

15.     The Court may grant the requested relief under the AWA, 7 U.S.C. §

2146(c), 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief), and the

Court's inherent equitable powers.

## THE PARTIES

16.     The Plaintiff is the United States of America. Authority to bring this

action is expressly vested in the Attorney General of the United States pursuant to

28 U.S.C. §§ 516 and 519 and 7 U.S.C. § 2146(c).

17.     Upon information and belief, K&M Pets maintains its principal place

of business at 2750 Bay Road, Saginaw, Michigan (the "Saginaw Facility"). K&M

Pets holds AWA dealer license 34-B-0244. Under license 34-B-0244, K&M Pets

may engage in regulated activity authorized by a valid class "B" license at the

6

Saginaw Facility and at 582 S. Main Street, Lapeer, Michigan (the "Lapeer Facility") (collectively, the "Facilities"). *See* Ex. 1 (Application for License).

18.     Kallan L. Hohman submitted an application for an AWA license for K&M Pets signed on or around April 27, 2024. In his application, Mr. Hohman listed 4301 Kirkwood Drive, Saginaw, Michigan as the mailing address. *Id*.

19.     In 2022, K&M Pets was registered as a Michigan limited liability company with the business mailing address 336 W. First Street, Suite 113, Flint, Michigan.

20.     Upon information and belief, K&M Pets owns, sells, and exhibits the animals that are the subject of this action in the Eastern District of Michigan.

## LEGAL BACKGROUND

### I. The Animal Welfare Act

21.     The AWA establishes minimum standards of care and treatment to be provided for certain animals bred and sold for use as pets, transported commercially, or exhibited to the public.  7 U.S.C. § 2131 *et seq*.

22.     The AWA is administered by the Secretary of Agriculture or her representative. 7 U.S.C. §§ 2132(b), 2146. The AWA authorizes the Secretary to "promulgate such rules, regulations, and orders as he may deem necessary in order to effectuate the purposes of [the AWA]." *Id*. § 2151. The Secretary has delegated her authority to the APHIS Administrator.

23.     The AWA defines a "dealer" as "any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of" any "animal whether alive or dead for research, teaching, exhibition, or use as a pet." 7 U.S.C. § 2132(f); *see also* 9 C.F.R. § 1.1 (definition of dealer).

24.     A class "B" licensee means a person who meets the definition of "dealer" and "whose business includes the purchase and/or resale of any animal." A class "B" licensee may also exhibit animals as a minor part of the business. 9 C.F.R. § 1.1 (definition of class "B" licensee).

25.     A "person" includes any "individual, partnership, firm, joint stock company, corporation, association, trust, estate, or other legal entity." 7 U.S.C. § 2132(a).

26.     Anyone who falls within the statutory definition of a dealer or exhibitor must obtain and maintain a valid license from the Secretary. 7 U.S.C. § 2134; *see also* 9 C.F.R. § 2.1(a)(1) (licensing requirements).

27.     The Secretary shall issue a license to a dealer or exhibitor upon application, provided that no such license shall be issued until the dealer or exhibitor has demonstrated that his facilities comply with the standards promulgated by the Secretary pursuant to 7 U.S.C. § 2133.

28.     By signing the application form, the applicant acknowledges that he

has reviewed the AWA and its regulations and standards and "agrees to comply with them." 9 C.F.R. § 2.2.

29. The AWA makes it unlawful for any dealer or exhibitor to knowingly violate the AWA. 7 U.S.C. § 2149(d).

30. The Secretary has promulgated regulations and standards to govern the humane handling, care, treatment, and transportation by dealers and exhibitors, which include the minimum requirements for handling, housing, feeding, watering, sanitation, ventilation, shelter from extreme weather and temperatures, adequate veterinary care, and separation by species. 7 U.S.C. § 2143(a)(1) & (a)(2)(A). Dealers must comply in all respects with the regulations and standards for the humane handling, care, treatment, and transportation of animals. 9 C.F.R. §§ 3.1-3.20, 3.25-3.41, 3.50-3.66, 3.125-3.142, 3.150-3.168.

31. The AWA requires the Secretary to make investigations and inspections as necessary to determine whether any dealer or exhibitor has violated any provision of the AWA or any regulation or standard issued thereunder. 7 U.S.C. § 2146(a). The AWA requires that "the Secretary shall, at all reasonable times, have access to the places of business and the facilities, animals, and those records required to be kept pursuant to section 2140 of this title of any . . . dealer [or] exhibitor." *Id.*

32. Specifically, each dealer or exhibitor shall, during business hours,

allow APHIS officials:

> (1) To enter its place of business;
> (2) To examine records required to be kept by the Act and the regulations in this part;
> (3) To make copies of the records;
> (4) To inspect and photograph the facilities, property and animals, as the APHIS officials consider necessary to enforce the provisions of the Act, the regulations and the standards in this subchapter; and
> (5) To document, by the taking of photographs and other means, conditions and areas of noncompliance.

9 C.F.R. § 2.126(a).

33.     Additionally, "the use of a room, table, or other facilities necessary for the proper examination of the records and inspection of the property or animals must be extended to APHIS officials by the dealer [or] exhibitor . . . , and a responsible adult shall be made available to accompany APHIS officials during the inspection process." *Id.* § 2.126(b). Dealers and exhibitors must make, keep, and retain records for at least one year pertaining to the purchase, sale, transportation, identification, and previous ownership of the animal, which fully and correctly discloses information concerning the animal purchased or otherwise acquired, owned, held, leased, or otherwise in his or her possession or under his or her control, or which is transported, sold, euthanized, or otherwise disposed of (including records of any offspring). 7 U.S.C. § 2140; 9 C.F.R. §§ 2.75(b)(1)-(3), 2.80.

34.     Under the AWA, United States district courts "are vested with

jurisdiction specifically to enforce, and to prevent and restrain violations of [the AWA], and shall have jurisdiction in all other kinds of cases arising under [the AWA]," except in one instance not applicable here. 7 U.S.C. § 2146(c).

## FACTUAL BACKGROUND

35.   K&M Pets operates an exotic pet store named Custom Creatures Pet Shop in Saginaw, Michigan. The Saginaw Facility's website advertises a wide variety of domestic and exotic animals for sale, including axolotls, African pygmy hedgehogs, Swedish ducklings, Blue Quaker parrots, Marshall ferrets, Vietnamese centipedes, and dogs. *Custom Creatures Pet Shop*, https://thecustomcreatures.com/ (last visited Feb. 20, 2026); *All Products*, https://thecustomcreatures.com/shop (last visited Feb. 20, 2026). K&M Pets also advertises animal encounter experiences with a Fennec fox, sloth, wallaby, kinkajou, and capybara, among other animals. *Services*, https://kmpetsllc.setmore.com/book (last visited Feb. 20, 2026).

36.   K&M Pets had a second pet store location in Lapeer, Michigan, which, on information and belief, closed in late 2024.

37.   K&M Pets has been cited for numerous violations of the AWA throughout the years, including its recent recurrent failure to provide access to its facilities. APHIS officials documented three serious violations in February of 2023, as well as numerous violations in the fall of 2024. Two inspections were conducted in August 2024 to assess whether K&M Pets was in compliance with

the AWA and its regulations and standards. During those inspections, officials observed eighteen noncompliances, of which six were documented as critical or direct citations.[2] After APHIS officials issued a 21-day suspension of K&M Pets' license, three inspections were conducted in September 2024 to obtain an animal inventory of the Facilities around the time of the suspension. But since September 24, 2024, APHIS officials have been unable to complete an inspection of the Facilities despite attempting to conduct inspections eleven times.

38.    USDA issued Class "B" license number 34-B-0244 to K&M Pets in 2022. K&M Pets was issued a new license in May 2024. By signing the application form for the license, Mr. Hohman acknowledged that he had reviewed the AWA and its implementing regulations and standards and agreed to comply with them as the President of K&M Pets. Ex. 1; *see* 9 C.F.R. § 2.2.

39.    K&M Pets' repeated failure to grant APHIS officials access to inspect its Facilities is a violation of 7 U.S.C. § 2146(a) and 9 C.F.R. § 2.126.

---

[2] As relevant here, a "critical" noncompliance is one that has a "serious or severe adverse effect on the health and well-being of the animal[s]." Animal Welfare Inspection Guide, USDA, 2-8 (revised June 2025), https://www.aphis.usda.gov/sites/default/files/animal-welfare-inspection-guide.pdf ("APHIS Animal Welfare Inspection Guide"). A "direct" noncompliance is a critical noncompliance that is having a serious or severe adverse effect on the health and wellbeing of the animal at the time of the inspection. *Id.* at 2-9.

### 2023 and 2024 Inspections

40.     In February 2023, K&M Pets was cited for inadequate handling of a sloth during a routine inspection after a patron was bit on the arm by a sloth during a sloth encounter experience at its Saginaw facility. The sloth was housed in an enclosure at the front of the store with no area in which it could remove itself from public view, and where it was exposed to cold drafts when the front door of the pet store was opened. Ex. 17 (February 21, 2023 Inspection Report for Saginaw Facility).

41.     Following the incident, APHIS officials issued K&M Pets an Official Warning for handling violations including: failing to demonstrate adequate experience and knowledge of the species it maintained, in violation of 9 C.F.R. § 2.131(a); failing to handle all animals as expeditiously and carefully as possible in a manner that does not cause trauma, overheating, excessive cooling, behavioral stress, physical harm, or unnecessary comfort, in violation of 9 C.F.R. § 2.131(b)(1); and failing to handle an animal during public exhibition so that there is minimal risk of harm to the animal and to the public, with sufficient distance and/or barriers between the animal and the general viewing public so as to assure the safety of animals and the public, in violation of 9 C.F.R. § 2.131(c)(1). Ex. 18 (March 23, 2023 Official Warning).

42.     On or about August 14 and 15, 2024, APHIS officials conducted an

inspection of K&M Pets' Saginaw Facility. The inspection was documented in two inspection reports: one report contained five direct noncompliances, and the second report contained one critical noncompliance and six other AWA citations. Ex. 13; Ex. 14.

43.     During the August 14 and 15, 2024 inspection, APHIS officials observed that the Saginaw Facility had a public area and a back area. The public area had dogs freely roaming throughout, as well as enclosures housing various animals such as kinkajous, coatis, and a fox. Ex. 14. Members of the public stuck their fingers, hands, arms, and faces near the enclosures without any identifiable attendants or employees present, and a young girl picked up and carried a young kinkajou around the store without supervision. *Id.*; *see* 9 C.F.R. § 2.131(d)(2). There was also an enclosure with exposed sharp wire points around an opening that a puppy was sticking its head through. Ex. 14; *see* 9 C.F.R. § 3.6(a)(2)(i). The fox enclosure was open-topped with members of the public close to it. Ex. 13 at 3; *see* 9 C.F.R. § 2.131(b)(1).

44.     APHIS officials observed a male white Angora rabbit in a rusty wire enclosure that had a significant amount of wet fur covered with brown liquid, that appeared to be a mixture of urine and/or diarrhea, under the rabbit's tail and covering its genitals, pelvic area, and both hind legs. Ex. 13. The rabbit had areas with matted fur as well as areas with hair loss, and the animal's skin was red and

appeared inflamed. *Id.* The facility representative stated that they had not noticed the condition previously and that the condition had not been diagnosed by a veterinarian. *Id.*; *see* 9 C.F.R. § 2.40(b)(2).

45.    In the back area of the Facility, APHIS officials observed a four-to-five-month-old hyena housed adjacent to two kinkajous. Ex. 13. The hyena was continuously growling, and the kinkajous were constantly hissing and pacing. *See* 9 C.F.R. § 2.131(b)(1).

46.    The hyena had apparent lameness in its right front leg and hind limbs and moved in a jerky manner. Ex. 13; *see* 9 C.F.R. § 2.40(b)(2). The officials could not further evaluate the overall health of the hyena due to the size of its primary enclosure, which was so small that the animal touched the front and back of the enclosure when attempting to turn. *See* 9 C.F.R. § 3.128. The licensee initially stated the animal had not been out of the enclosure for two weeks, then stated that the animal had not been let out since the week before the inspection, and then stated that the hyena was let out daily. The hyena had also not been evaluated by a veterinarian since its acquisition. APHIS officials observed that the hyena was being fed a nutritionally inadequate diet, which can cause metabolic bone disease—a severely painful and debilitating condition that can lead to significant morbidity and mortality. *See id.* § 3.129(a). No employee at the facility had prior experience working with hyenas. *See id.* § 2.131(a).

47.     APHIS officials also observed that the kinkajous were being fed an inadequate diet in violation of 9 C.F.R. § 3.129(a). Additionally, the primary enclosures for the two kinkajous and a coati did not provide sufficient space for the animals to make normal postural or social adjustments with adequate freedom of movement. Ex. 13; Ex. 14; *see* 9 C.F.R. § 3.128.

48.     APHIS officials found that K&M Pets did not have an attending veterinarian and, as noted above, that multiple animals at the facility needed veterinary care. Ex. 13; *see* 9 C.F.R. § 2.40(a)(1). K&M Pets gave APHIS officials the name of a person that it claimed was the attending veterinarian, but when that veterinarian was contacted, the veterinarian stated that they had declined to be the attending veterinarian for K&M Pets. Ex. 13.

49.     APHIS officials also observed that K&M Pets was not keeping records of animals on hand that included births and deaths at the facility and only had individual acquisition and disposition records of animals acquired from other facilities. *See* 9 C.F.R. § 2.75(b)(1). K&M Pets had additionally acquired three animals from an unlicensed breeder in violation of 9 C.F.R. § 2.132(d). *See* Ex. 14.

50.     On or about August 19, 2024, APHIS officials conducted a focused inspection[3] of K&M Pets' Saginaw Facility to re-inspect the direct citations found

---

[3] *See Animal Welfare Inspection Guide*, USDA, at 3-27, https://www.aphis. usda.gov/sites/default/files/animal-welfare-inspection-guide.pdf (a "focused" inspection is an unannounced inspection that may include re-inspection for

during the inspection conducted on August 14 and 15, 2024. APHIS officials found

two critical-repeat noncompliances, three other repeat noncompliances, and one

additional noncompliance. Ex. 15.

51.     The Angora rabbit and hyena did not receive veterinary care as

APHIS officials had instructed during the previous inspection. Instead, K&M Pets

claimed that it sold the animals on August 15, 2024. *See* 9 C.F.R. § 2.40(b)(2).

The disposition records for the Angora rabbit and hyena contained false

information regarding the persons to whom the animals were allegedly sold, so

APHIS officials could not follow-up to ensure that the animals had received

adequate veterinary care. Ex. 15; *see* 9 C.F.R. § 2.75(b)(1). An APHIS official

visited the Michigan address for the person recorded as purchasing the Angora

rabbit and was told that no one with that name lived there and that no one there had

purchased a rabbit. An APHIS official also went to the recorded address in

Lohman, Missouri for the purchaser of the hyena, which was a vacant lot. The

APHIS official was additionally informed by a mail carrier at the U.S. Postal

Service in Lohman that no person with that name lived in the area, which was a

small town of around 100 people. Ex. 15.

---

noncompliances identified during a previous inspection or a partial inspection of
animals or records only, whereas a "routine" inspection is a normal periodic,
unannounced inspection that generally includes a complete inspection of the
facility).

52.     During the August 19, 2024 inspection, APHIS officials also observed that the kinkajous from the August 14, 2024 inspection were still being fed a diet that was not nutritionally complete or wholesome. *Id.*; *see* 9 C.F.R. § 3.129(a). And the primary enclosures of the kinkajous and coati still did not provide sufficient space for the animals to make normal postural or social adjustments with adequate freedom of movement. *See* 9 C.F.R. § 3.128.

53.     During the same inspection, APHIS officials observed that K&M Pets still did not have an attending veterinarian. Ex. 15; *see* 9 C.F.R. § 2.40(a)(1). The facility representative—who was not Mr. Hohman—gave APHIS officials the name and number of a different veterinarian. APHIS officials called Mr. Hohman as well as the Vice President of K&M Pets the next day to ask if that veterinarian was the new attending veterinarian, but the calls were not answered. An APHIS official emailed Mr. Hohman and the Vice President asking about the second veterinarian, the status of the Program of Veterinary Care, and whether the veterinarian provided information about diets for the animals. Mr. Hohman replied with an email that stated, "The new attending veterinarian will have this all completed ASAP, I will inquire about an updated timeline." He did not provide further information. The APHIS official sent a follow-up email but did not receive a response.

54.     APHIS officials issued a 21-day suspension of K&M Pets' AWA

license on August 29, 2024. Ex. 16. The 21-day suspension noted that it is a violation of AWA regulations to buy, sell, transport, exhibit, or deliver for transportation any "animal" as defined by the AWA and its regulations during the suspension period. *Id.*

55.     On or about September 5, 2024, at the beginning of the 21-day suspension, an APHIS official conducted "focused" inspections of the Saginaw Facility and the Lapeer Facility to obtain an accurate inventory of the animals at the Facilities.

56.     On or about September 24, 2024, at the end of the 21-day suspension, an APHIS official conducted a "focused" inspection of the Saginaw Facility, again to obtain an accurate inventory of the animals. But when the APHIS official attempted to inspect the Lapeer Facility the same day from approximately 1:45 PM to 4:00 PM, a responsible adult was not available to accompany the APHIS official for an inspection. The APHIS official contacted Mr. Hohman at approximately 12:45 PM, stating he intended to drive to the Lapeer Facility to verify the inventory and could arrive before 2:00 PM. Mr. Hohman responded that someone would be there until that time. When the APHIS official arrived at the Lapeer Facility at approximately 1:45 PM and knocked on the front and back doors, he received no response. The APHIS official called and texted both of Mr. Hohman's phone numbers but received no response. The APHIS official subsequently contacted the

Saginaw Facility several times, attempted to contact Mr. Hohman, and waited at the Lapeer Facility until 4:00 PM before leaving. Ex. 2; Ex. 19 (Attempted Inspection Checklist, September 24, 2024).

57.    On or about November 7, 2024, between approximately 11:05 AM and 12:05 PM, a responsible adult was not available to accompany APHIS officials to inspect the Saginaw Facility. An APHIS official attempted to contact Mr. Hohman by having the store manager present at the facility call him and by calling Mr. Hohman directly. Ex. 3. APHIS officials were informed that employees— other than Mr. Hohman—could no longer host inspections. APHIS officials then emailed K&M Pets to ask for new optimal hours within which they could meet Mr. Hohman to conduct inspections. Ex. 20 (Attempted Inspection Checklist, November 7, 2024).

58.    On or about November 20, 2024, at approximately 11:05 AM, a responsible adult was not available to accompany APHIS officials during the inspection at the Saginaw Facility. An APHIS official attempted to contact Mr. Hohman by having an employee present at the store call him. Ex. 4. The APHIS official again requested new optimal hours within which they could meet Mr. Hohman to conduct inspections. Ex. 21 (Attempted Inspection Checklist, November 20, 2024).

59.    On or about December 11, 2024, at approximately 12:15 PM, a

responsible adult was not available to accompany APHIS officials during the inspection process at the Saginaw Facility. An APHIS official attempted to contact Mr. Hohman by phone call and email. Ex. 5. APHIS officials again requested new optimal hours within which they could meet Mr. Hohman to conduct inspections. Ex. 22 (Attempted Inspection Checklist, December 11, 2024).

60.     On or about December 11, 2024, at approximately 10:55 AM, a responsible adult was not available to accompany APHIS officials during the inspection process at the Lapeer Facility. The APHIS official observed that the store appeared vacant and the store sign was removed from the building. APHIS officials sent Mr. Hohman a voluntary site cancellation form by email. Ex. 22.

61.     On or about January 23, 2025, at approximately 11:10 AM, a responsible adult was not available to accompany APHIS officials during the inspection process at the Saginaw Facility. An APHIS official attempted to contact Mr. Hohman by phone call, text, and email. Ex. 7. APHIS officials again requested new optimal hours during which they could meet Mr. Hohman to conduct inspections. Ex. 23 (Attempted Inspection Checklist, January 23, 2025).

62.     On or about January 23, 2025, at approximately 11:10 AM, a responsible adult was not available to accompany APHIS officials during the inspection process at the Lapeer Facility. An APHIS official attempted to contact Mr. Hohman by phone, text, and email. Ex. 8. APHIS officials informed the store

manager of the voluntary site cancellation form and told the manager that if the store at the Lapeer Facility is not reopening, to let Mr. Hohman know to cancel the site. Ex. 23.

63.     On or about March 19, 2025, from approximately 11:00 AM to 11:40 AM, a responsible adult was not available to accompany APHIS officials during the inspection process at the Saginaw Facility. An APHIS official attempted to contact Mr. Hohman by talking to a store employee and by phone call and text. Ex. 9.

64.     On or about March 19, 2025, from approximately 11:00 AM to 11:40 AM, a responsible adult was not available to accompany APHIS officials during the inspection process at the Lapeer Facility. An APHIS official attempted to contact Mr. Hohman by talking to a store employee and by phone call and text. Ex. 10.

65.     On or about June 4, 2025, from approximately 10:20 AM to 11:30 AM, a responsible adult was not available to accompany APHIS officials during the inspection process at the Saginaw Facility. An APHIS official attempted to contact Mr. Hohman by talking to a store employee and by phone call. Ex. 11; Ex. 24 (Attempted Inspection Checklist, June 4, 2025).

66.     On or about January 23, 2026, an APHIS official entered the Saginaw Facility in plain clothes and walked around to observe the animals without

conducting an official inspection. He noticed a sloth enclosure at the front of the

store, where the animal experienced a harsh draft from the negative-22-degree

weather. He also saw overall dirty enclosures, as well as enclosures for animals

that lacked water or shelter. He went outside and put on his APHIS uniform before

reentering the store at approximately 11:33 AM and introducing himself to the

employee as an APHIS inspector there to conduct a routine unannounced

inspection. The store employee contacted Mr. Hohman, who told the employee that

he was unavailable for an inspection and that the employee was not authorized to

facilitate the inspection. The APHIS official also attempted to call Mr. Hohman. At

12:51 PM, the APHIS official left the Saginaw Facility without conducting an

inspection. Ex. 12; Ex. 25 (Attempted Inspection Checklist, January 23, 2026).

67.    To date, K&M Pets has failed to grant APHIS officials access to

inspect its Facilities the 11 times officials have attempted to do so since the August

and September 2024 inspections. *See* Ex. 2; Ex. 3, Ex. 4; Ex. 5; Ex. 6; Ex. 7; Ex. 8;

Ex. 9; Ex. 10 Ex. 11; Ex. 12.

68.    Because APHIS officials have not been able to complete an inspection

of K&M Pets' Facilities since September 2024, APHIS officials are not able to

assess the health and welfare of the animals at the Facilities or determine whether

the types of issues identified in the August 2024 inspections have been fully

addressed or have recurred, although APHIS official observations before

attempting to conduct the January 23, 2026 inspection indicate the recurrence of at least some serious violations. APHIS officials have also been unable to review records and other documents that K&M Pets is required to maintain and make available to APHIS officials.

69.     Unannounced inspections are critical to ensuring that APHIS inspectors can accurately assess a licensee's compliance with the AWA, its regulations, and standards, and ensure the well-being of AWA-regulated animals. APHIS officials have tried time and time again to bring K&M Pets into compliance with the AWA's access requirements to ensure the safety of the animals at the Facilities and members of the public, but K&M Pets has blatantly refused.

## CLAIM FOR RELIEF

**Defendant K&M Pets failed to provide access to inspect records, property, and animals in violation of 7 U.S.C. § 2146(a) and 9 C.F.R. § 2.126.**

70.     The United States incorporates by reference all allegations of the Complaint.

71.     As set forth above, K&M Pets is violating the AWA and its implementing regulations by failing to provide APHIS officials with access to inspect records, property, and animals at the Saginaw and Lapeer Facilities in violation of 7 U.S.C. § 2146(a) and 9 C.F.R. § 2.126.

72.     Unless enjoined, K&M Pets will continue to violate the AWA and its implementing regulations and to prevent APHIS officials from verifying the well-

being of the animals at K&M Pets' Facilities.

73.     The United States is entitled to a declaratory judgment that Defendant has violated the AWA and its implementing regulations by failing to provide APHIS officials access to the Saginaw and Lapeer Facilities to conduct an inspection. 28 U.S.C. § 2201. The United States is entitled to an injunction to prevent and restrain Defendant from operating in violation of the AWA and its implementing regulations and standards. 7 U.S.C. § 2146(c).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1.  Declare that Defendant has violated and continues to violate the AWA, 7 U.S.C. § 2146(a), and 9 C.F.R. § 2.126;

2.  Preliminarily and permanently enjoin and restrain Defendant from violating the AWA pursuant to 7 U.S.C. § 2146(c), specifically requiring K&M Pets to:

    a.  Allow APHIS officials, during business hours, to enter K&M Pets' Facilities for an unannounced inspection and ensure that a responsible adult is made available to accompany APHIS officials during the inspection process;

    b.  Allow APHIS officials, during business hours, to examine records required to be kept by the AWA and its implementing regulations and standards, to make copies of the records, to inspect and photograph the facilities, property, and animals, as the APHIS officials consider necessary, and to document conditions and areas of noncompliance;

3.  Preliminarily enjoin Defendant from engaging in activity regulated by the AWA unless and until Defendant comes into compliance with the AWA and

the terms of the injunction;

4. Award the United States its costs in this action; and

5. Grant other relief that the Court deems just and proper.

DATED February 24, 2026 Respectfully submitted,

 ADAM R.F. GUSTAFSON
 Principal Deputy Assistant Attorney General
 United States Department of Justice
 Environment & Natural Resources Division

 */s/ Kamela A. Caschette*
 KAMELA A. CASCHETTE
 Trial Attorney (NY Bar No. 5679188)
 CHRISTIAN H. CARRARA
 Trial Attorney (NJ Bar No. 317732020)
 BONNIE BALLARD
 Trial Attorney (MD Bar No. 2211280027)
 Wildlife & Marine Resources Section
 P.O. Box 7611, Ben Franklin Station
 Washington, DC 20044-7611
 christian.carrara@usdoj.gov
 kamela.caschette@usdoj.gov
 bonnie.m.ballard@usdoj.gov
 Phone: (202) 598-7868 (Caschette)
   (202) 598-9736 (Carrara)
   (202) 532-5567 (Ballard)
 Fax: (202) 305-0275

 *Attorneys for the United States of America*

United States District Court
Eastern District of Michigan

United States of America,

    Plaintiff,                     Civil No. 1:26-cv-10644

v.

K&M Pets LLC d/b/a Custom
Creatures,

    Defendant.

---

# Index of Exhibits

---

| **Exhibit** | **Description** |
|---|---|
| 1 | K&M Pets LLC Application for License |
| 2 | September 24, 2024 Inspection Report for Lapeer Facility |
| 3 | November 7, 2024 Inspection Report for Saginaw Facility |
| 4 | November 20, 2024 Inspection Report for Saginaw Facility |
| 5 | December 11, 2024 Inspection Report for Saginaw Facility |
| 6 | December 11, 2024 Inspection Report for Lapeer Facility |
| 7 | January 23, 2025 Inspection Report for Saginaw Facility |
| 8 | January 23, 2025 Inspection Report for Lapeer Facility |
| 9 | March 19, 2025 Inspection Report for Saginaw Facility |
| 10 | March 19, 2025 Inspection Report for Lapeer Facility |
| 11 | June 4, 2025 Inspection Report for Saginaw Facility |
| 12 | January 23, 2026 Inspection Report for Saginaw Facility |
| 13 | August 14, 2024 Routine Inspection Report for Saginaw Facility |
| 14 | August 14, 2024 Focused Inspection Report for Saginaw Facility |
| 15 | August 19, 2024 Focused Inspection Report for Saginaw Facility |
| 16 | Official Notice of 21 Day Suspension of License |
| 17 | February 21, 2023 Inspection Report for Saginaw Facility |
| 18 | March 23, 2023 Official Warning |
| 19 | Attempted Inspection Checklist, September 24, 2024 |

20   Attempted Inspection Checklist, November 7, 2024
21   Attempted Inspection Checklist, November 20, 2024
22   Attempted Inspection Checklist, December 11, 2024
23   Attempted Inspection Checklist, January 23, 2025
24   Attempted Inspection Checklist, June 4, 2025
25   Attempted Inspection Checklist, January 23, 2026